# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

UNITED STATES OF AMERICA,        :

        :      **97 Cr. 1105 (HB)**

      **-against-**        :

        :      **OPINION & ORDER**

**JOSE ERBO**        :

        :

      **Defendant.**        :

------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**[*]

On October 17, 2002, I sentenced defendant Jose Erbo ("Erbo") to six consecutive terms of life imprisonment for, *inter alia*, racketeering and murder in violation of 18 U.S.C. §§ 1959(a)(1)&(2), and 1962(c)&(d).  On May 20, 2005, Erbo filed this pro se motion for a new trial based on "newly discovered evidence" pursuant to Rule 33 of the Federal Rules of Criminal Procedure.[1]  Erbo contends that the Government violated its Brady[2] and Giglio[3] obligations to disclose exculpatory information and impeachment material prior to trial.  For the reasons that follow, the motion is DENIED.

## I.      FACTUAL BACKGROUND

At trial, the Government proved that during the 1990s Erbo, a/k/a "Tito," headed a drug ring called "Tito's Crew," which sold cocaine and crack.  (Tr.[4] 197).  In addition to selling drugs, Tito's Crew also performed contract murders "for hire" and committed other non-contractual murders in furtherance of its narcotics trafficking activities.  (Tr. 198-99).  Erbo himself was involved in the murders of Lourdes Dominguez, Luis Loiaza, Domingo DeLeon, Dagoberto DeLeon, Francisco Gonzalez, Nelson Almonte, and Rafael Abrue, as well as the attempted murder of Epifanio Delacruz.  (See Tr. at 1206-11).

---

[*] Christine Jung, a first year student at Cornell Law School and a summer 2006 intern in my chambers, provided substantial assistance in researching and drafting this opinion.

[1] By Order dated November 25, 2005, I accepted Erbo's Rule 33 motion for filing as of May 20, 2005, the date that appears on the motion.  Inexplicably, the motion was not docketed until Erbo submitted a second copy in September 2005.  The verdict was entered in this matter on  May 23, 2002.  Thus, Erbo's motion is timely if in fact it was mailed on May 20, 2005.

[2] Brady v. Maryland, 373 U.S. 83 (1963).

[3] Giglio v. United States, 405 U.S. 150 (1972).

[4] Citations to "Tr." refer to the trial transcript.

The prosecution's key witness at trial was Miguel Feliz ("Feliz"), a former member of Tito's Crew. It was disclosed that Feliz had entered into a cooperation agreement with the Government. (Tr. 207). Feliz admitted that he hoped to receive a "5K1 letter" and a reduced sentence. (Tr. 208). Feliz testified that he began working for Erbo in 1990. (Tr. 196). Eventually, Feliz moved up through the ranks and became Erbo's partner. (Tr. 223-24). Feliz testified that he received certain murder contracts from an individual known to him as "Leo," who worked for an individual known as "the Colombian." (See, e.g., Tr. 277-78). Feliz testified that he had never met the Colombian, and did not know his true identity. (Tr. 277). However, Feliz did know that the Colombian sold drugs, because he also was a supplier for Tito's Crew. (Tr. 277). Feliz testified that he participated in "about 14 or 15" murders with Erbo, (Tr. 200), and that he personally murdered Francisco Gonzalez. (Tr. 368).

Erbo has provided documentation that, in 1999 and 2000 while incarcerated at the Metropolitan Correctional Center ("MCC"), Feliz developed a record of disciplinary violations for, *inter alia* lying to staff members and insolence. A Bureau of Prisons ("BOP") report, dated January 30, 2003, concluded that Feliz had been extorting money and goods from fellow inmates.[5] (Defendant's Memorandum in Support of Rule 33 Motion, dated May 20, 2005 ("Def.'s Mem."), Ex. 11). Apparently, some of these incidents occurred during Erbo's trial, which concluded on May 23, 2002. The BOP report indicates that, on at least one occasion, Feliz succeeded in having another inmate moved from his housing unit by providing false information to the Assistant United States Attorney handling Feliz's case. (Id.)

Erbo now contends (and the Government concedes) that the individual known as "the Colombian" was in fact Ramon Velasquez, the leader of a major cocaine trafficking organization. According to Feliz's testimony, Erbo's crew committed the murders of Lourdes Dominguez, Luis Loiaza, Domingo DeLeon, and Dagoberto DeLeon, at the behest of the "Colombian" and his organization. (Tr. 278, 285-86, 292). Velasquez, along with various other members of his organization, was indicted for murder and racketeering in December 1996. See United States v. Velasquez, 96 Cr. 126, 1997 WL 473578, *1 (S.D.N.Y Aug. 18, 1997).

---

[5]With his reply papers, Erbo includes declarations from two individuals, Jorge Ortega-Gandia and Johnny Martinez, who attest that, while incarcerated at the MCC, Feliz approached them to enlist their help in extorting other inmates. Both affiants state that Feliz claimed he had been extorting other inmates since early 2000. Ortega-Gandia attests that Feliz "brag[ged] [that] he could do whatever he wanted to . . .[in the MCC], with the assistance of [his] Assistant U.S. Attorney." (Defendant's Reply Memorandum, dated March 30, 2006 ("Def.'s Reply Mem."), Ex. 4). Erbo appears to have submitted a "motion" to include these declarations in the record. To the extent Erbo requests consideration of these declarations, that motion is granted.

Velasquez had previously plead guilty pursuant to a cooperation agreement in a separate prosecution brought by the U.S. Attorney for the Eastern District of New York. Id. In connection with that cooperation, Velasquez provided the Government with the names of certain former customers and employees. Id. Erbo also contends that "Leo" (Feliz's contact in the Colombian's organization) was in fact an individual named Gregorio Monegro (a/k/a "Leo Monegro"). However, the Government argues that "Leo" was not Gregorio Monegro, but rather was another unidentified individual, who was a fugitive at the time of Erbo's trial.

II.   **DISCUSSION**

In support of his motion for a new trial, Erbo argues that: 1) the Government violated its Brady obligations by failing to disclose the identities of "Leo" and "the Colombian;" and 2) the Government violated its Giglio obligations by suppressing impeachment evidence concerning Miguel Feliz.

A.  Rule 33 Standards

A motion for a new trial based on newly discovered evidence may be granted "if the interest of justice so requires." Fed. R. Crim. P. 33. District courts have wide discretion to consider such motions. See U.S. v. Aponte-Vega, 230 F.3d 522, 525 (2d Cir. 2000). A Rule 33 motion based on newly discovered evidence should be granted when: 1) defense counsel could not have discovered the new evidence through the exercise of reasonable diligence prior to or during trial; 2) the new evidence is material; and 3) the new evidence is not cumulative. See U.S. v. Middlemiss, 217 F.3d 112, 122 (2d Cir. 2000). Further, the newly discovered evidence must be of such import that it would probably lead to an acquittal, and creates reasonable doubt that would not exist otherwise. See Aponte-Vega, 230 F.3d. at 525. See also United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980) (noting standard that "admission of the [new] evidence would probably lead to an acquittal"); Middlemiss, 217 F.3d at 122 ("The controlling issue generally is the effect the evidence would have on the jury's verdict if it had been submitted at trial."); U.S. v. Damblu, 945 F. Supp. 672, 675 (S.D.N.Y.1996) (Baer, J.), aff'd, 134 F.3d 490 (1998) (denying Rule 33 motion because, inter alia, "there is not a reasonable likelihood that the allegedly false testimony affected the jury's verdict"). Thus, a court should allow a new trial

when there is a "real concern that an innocent person may have been convicted." United States v. Sanchez, 969 F.2d 1409, 1414 (2d. Cir. 1992).  The defendant bears the burden of showing that a new trial is required.  See Damblu, 945 F. Supp. at 674.

B.    Brady and Giglio

Prosecutorial misconduct may provide grounds for a new trial.  See Brady, 373 U.S. 83; Giglio v. U.S., 405 U.S. 150.  Under Brady the Government is obligated to furnish to the defendant material exculpatory evidence.  See Brady, 373 U.S. at 87.  Evidence is "material" if it could "undermine confidence in the verdict."  Middlemiss, 217 F.3d at 123.  Thus, a defendant may be entitled to a new trial if the Government failed to disclose material exculpatory evidence.  Id.  However, if the defendant is already aware of the supposedly exculpatory information, there is no Brady violation.  Id.; see also United States v. Diaz, 922 F.2d 998, 1007 (2d Cir 1990).  In addition, the Government has no duty, under Brady, to disclose "preliminary, challenged, or speculative information."  Diaz, 922 F.2d at 1006.

Under Giglio, a new trial is justified if the Government suppressed material impeachment evidence concerning a key witness for the prosecution.  See Giglio, 405 U.S. at 153-54 ("[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" may warrant a new trial) (internal quotation omitted).  However, potential impeachment evidence is material only if the witness whose testimony is attacked supplied the sole evidence linking the defendant to the crime, or where the impact on the witness's credibility would have compromised a key element of the prosecution's case.  See Damblu, 945 F. Supp. at 674.  The nondisclosure of cumulative or redundant impeachment material generally will not warrant a new trial.  Id. See also Diaz, 922 F.2d at 1006; Middlemiss, 217 F.3d at 123.

1.  "Leo" and "the Colombian"

Erbo contends that the Government violated its Brady obligations by failing to disclose the identities of "Leo" and the "Colombian."  Erbo claims that he should have been provided with all of the discovery material produced in the prosecution of the Velasquez organization.  At

Erbo's trial, the Government proved that four of the myriad murders with which Erbo was involved were contracted to Erbo's crew from "the Colombian" through "Leo."

With respect to "Leo," the Government maintains that "Leo" is not, as Erbo claims, Gregorio Monegro. Rather, the Government argues that the "Leo" mentioned at Erbo's trial is in fact another (unidentified) individual who was a fugitive at the time of Erbo's trial. While it appears that Gregorio Monegro was prosecuted, along with Velasquez, in a separate case brought in the Eastern District, Erbo has presented no evidence in support of his view that the "Leo" about whom Feliz testified was in fact Gregorio Monegro. In any case, it is unclear what, if any, exculpatory information "Leo" could have provided in Erbo's defense, or whether "Leo" would have been willing to testify at all. Thus, Erbo has not shown that the Government's failure to disclose "Leo's" identity to Erbo at the time of trial (assuming "Leo's" identify was even known to the Government then) warrants a new trial.

The Government agrees that the individual referred to during Erbo's trial as "the Colombian" was in fact Ramon Velasquez. However, the Government maintains that "the Colombian's" identity may have been disclosed to Erbo's counsel during trial. In any case, Erbo has not shown how the disclosure of "the Colombian's" true identity would have aided his defense. Erbo has produced no evidence that Velasquez, who is currently serving a life sentence for involvement in numerous killings, would have been willing to testify on Erbo's behalf, or what such testimony would have revealed. Erbo refers to a list of co-conspirators that Velasquez apparently previously provided to the Government, however, the fact that Erbo's name may not have appeared on this list does not mean that he was innocent of the charges for which he was convicted. Furthermore, "Leo" and "the Colombian" were involved in only four of the seven murders that the Government linked to Erbo. In sum, Erbo has not shown that the Government's alleged failure to disclose the true identities of "Leo" or "the Colombian" warrants a new trial. To succeed, Erbo must show not only that the Government erred, but that there is a reasonable likelihood that error affected the outcome. No such showing has been made here.

2.  "Miguel Feliz"

Erbo contends the Government violated its Giglio obligations by failing to disclose Feliz's misconduct at the MCC. Erbo contends that the prosecution knew about these incidents, and that the failure to disclose this impeachment material is grounds for a new trial. Certainly,

the Government cannot be faulted for failing to disclose that which it did not know. See <u>Diaz</u>, 922 F.2d at 1006. The BOP report concerning Feliz's most serious transgressions—the extortion of other inmates and the manipulation of an Assistant U.S. Attorney to have certain inmates relocated—was issued on January 30, 2003, months after the verdict was rendered in Erbo's case. Furthermore, given Feliz's lengthy criminal history including murder and drug trafficking, all of which was before the jury, it is unlikely that any additional disclosures regarding Feliz's "lifestyle" in or out of jail would have had an appreciable affect on the jury's evaluation of his credibility. At trial, the jury heard that Feliz entered the country illegally; jumped bail; lied on his green card application; did not pay taxes; used fake licenses to drive cars; participated in approximately 14 to 15 murders; lied to the police on numerous occasions; and felt no remorse when he shot one victim because he "wanted to shoot . . . him." (Tr. 193-94, 198, 200, 204-05, 372-73, 375). Thus, in light of the plethora of impeachment evidence presented at trial, the Government's failure to disclose Feliz's disciplinary infractions (even if known to the Government prior to trial) does not warrant a new trial.

C. <u>Immunity</u>

With his reply papers, Erbo submitted a "motion" to compel immunity for his co-defendants Michael Mungin ("Mungin"), Stanley Davis ("Davis"), and Robert Brown ("Brown"), in order to allow them to testify in Erbo's defense. All three were members of Erbo's organization, and each plead guilty to participation in various crimes, including murder. Erbo contends that Mungin, Davis, and Brown could provide exculpatory testimony. Erbo contends that the Government "threatened" these individuals to prevent them from testifying on Erbo's behalf.

Generally, the Government is not required to confer immunity for the benefit of a defendant. See <u>U.S. v. Skelly</u>, 442 F.3d 94, 100-101 (2d Cir. 2006). The Government may be compelled to grant immunity only when: 1) the Government has discriminatorily granted immunity to gain a tactical advantage or, through its own overreaching, has forced a witness to invoke the Fifth Amendment; 2) the witness's testimony is material, exculpatory, and not cumulative; and 3) the testimony is unobtainable from any other source. See <u>Skelly</u>, 442 F.3d at 101; <u>U.S. v. Burns</u>, 684 F.2d 1066, 1077 (2d Cir. 1982).

Erbo has provided no evidence (apart from his own assertions) that the Government "discriminatorily" withheld immunity from these individuals or wrongfully caused them to invoke the Fifth Amendment. Further, given the fact that these individuals each plead guilty to some of the same crimes for which Erbo was convicted, it is highly unlikely that their testimony would exculpate Erbo; rather, they would likely further inculpate him.

## III. CONCLUSION

For the reasons set forth above, Erbo's motion for a new trial is DENIED. Erbo's motion to compel the Government to provide immunity to his co-defendants is also DENIED. The Clerk of the Court is instructed to close this and any other open motions and to remove this matter from my docket.

**SO ORDERED.**

July 31, 2006
New York, New York

U.S.D.J.

7